Nakles *v.* Union Real Estate Company of
Pittsburgh, Appellant.

408

Argued March 18, 1964.  Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused November 9, 1964.

*David R. Levin,* for appellant.

*Paul E. Moses,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, September 29, 1964:

Appellees operated a restaurant in Connellsville, Pennsylvania.  Around the end of July, 1957, they were given notice to vacate their premises, whereupon

they began a search for a new location. They found a storeroom for rent in the Connellsville Shopping Center and, responding to a sign in the window, contacted A. J. Aberman, the President of the appellant corporation.

After the initial contact, there began a series of negotiations and correspondence out of which this case arose. The chronological sequence of these negotiations and the correspondence is as follows:

At the first meeting, appellant indicated a rental demand of $465 per month; this demand was rejected by appellees. At a second meeting between Nakles and Aberman during the early part of August, 1957, appellant reiterated its asking price of $465. On August 16, 1957, another meeting was held, and the parties agreed on $275 per month for five years. At the August 16th meeting, the parties shook hands and agreed. Nakles paid one month's rent by check bearing the notation "1st month's Rent re Connellsville Shopping Center". The receipt of Union Real Estate bore a similar notation. This oral agreement was then to be reduced to a writing. The same day as the meeting, Union Real Estate Company sent appellees three copies of the lease and a plan of the dimensions of the demised premises. Appellees signed and returned the leases to Union. On August 20, 1957, Union Real Estate wrote a letter to the William Delp Company, a firm which was to design and furnish the restaurant, in which it stated that it was enclosing a plan of the storeroom Mr. Nakles "is renting" in the Connellsville Shopping Center.

On August 31, 1957, one day before the lease was to take effect, Union Real Estate Company wrote the appellees, indicating its regret that it was not legally free to enter into the lease.

Union Real Estate Company then re-rented the property to Bernedette Appliance Store at a rental of

$385, $110 more per month than agreed to in the Nakles-Aberman oral agreement.

A jury trial resulted in a verdict for appellees in the amount of $15,000. Appellant's motions for new trial and judgment n.o.v. were denied and judgment was entered on the verdict; this appeal followed. "In considering a motion for judgment n.o.v., the evidence, together with all reasonable inferences therefrom, are considered in the light most favorable to the verdict winner. However, in considering the action of the lower court in granting or refusing a new trial, an appellate court will affirm, unless there has been a clear abuse of discretion or an error of law which controlled the outcome of the case or decision of the lower court". *Chambers v. Montgomery,* 411 Pa. 339, 192 A. 2d 355 (1963), and cases cited therein.

In support of its motion for a judgment n.o.v., the appellant alleges that the appellees are without a valid cause of action, and that the action is barred by the statute of frauds. The thrust of this argument is that the parties were merely negotiating and no meeting of the minds was ever reached, in that the lease agreement was never reduced to writing as required by the statute of frauds. We have held on many occasions that the mere formality of reducing an agreement to a writing when not accomplished will not destroy the agreement, if the agreement does not fall within the Statute of Frauds. *Taylor v. Stanley Co. of America,* 305 Pa. 546, 158 A. 157 (1932), and cases cited therein. The evidence in this case indicates a meeting of the minds by the parties as of August 16, 1957, when Nakles paid the first month's rent. Union's acceptance of the check, the mailing of the lease and Aberman's letter to Delp are all indicative of an agreement which merely awaited the formality of being reduced to writing. Thus, under the Pennsylvania Statute of Frauds, Act of March 21, 1772, 1 Sm.

L. 389, §1, 33 P.S. §1, a tenancy at will, if nothing more, was created. We therefore conclude that the appellees did prove a valid cause of action.

The appellant next alleges that the issue of damages as put to the jury was so speculative that the jury had no basis upon which to render a fair money verdict. In particular, the appellant addresses itself to claims for damages for loss of profits and the quality and quantity of the other evidence on damages. Before any comment on the issue is made, we must once again reiterate the proposition that the evidence of damages must be reasonably precise so as to provide the jury with an adequate framework upon which to base a verdict. Cf. *Keystone Diesel E. Co. Inc. v. Irwin,* 411 Pa. 222, 191 A. 2d 376 (1963). In the case at bar, the jury was not given this framework on the question of loss of profits. The appellees were permitted to show their profits at the old location and their losses at the location they accepted after Aberman's breach. The evidence as such was not sufficient to provide the jury with the required framework. The profits and losses at different locations have no probative relationship to the damages in this case.

The liability portion of this case has been fairly and fully litigated. The appellant raises no question as to the evidence but merely challenges liability on an issue of law. We have examined its contention and have concluded that liability was clearly established. It would, therefore, serve no useful purpose to retry the issue of liability and once again expose the plaintiffs-appellees to the hazards of a jury trial, an obstacle they have already overcome. See *Daugherty v. Erie R. R. Co.,* 403 Pa. 334, 169 A. 2d 549 (1961); *Berkeihiser v. DiBartolomeo,* 413 Pa. 158, 196 A. 2d 314 (1964) and cases cited therein.

Judgment reversed and case remanded to the court below for new trial limited to the issue of damages.